The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. On the date of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at the time of the alleged injury.
3. Companion Property and Casualty Insurance Company was the workers' compensation insurance carrier on the risk at the time of the alleged injury.
4. An Industrial Commission Form 22 Wage Chart, marked as Stipulated Exhibit Number One, is stipulated into evidence.
5. Plaintiff seeks temporary total disability compensation for the period of 28 March 1994 through 8 July 1994.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was twenty-five years old, married and the mother of two children. Plaintiff, who had a tenth grade education, began her employment with defendant-employer on 23 August 1993.
2. Defendant-employer was a manufacturer of polypropylene fiber. Defendant-employer used several different machines in its manufacturing processes. When plaintiff began her employment, she was assigned to operate a machine known as the "extruder." Eventually, plaintiff was also required to operate the "zinser" and the "draw twister."
3. Plaintiff was required to doff the machines when yarn packages they produced became full. Plaintiff would then inspect the yarn packages, place the packages in a bin, and transport the packages to the next processing position. At times, plaintiff inspected finished products for consistency of color and quality. At other times, she helped to package finished products for shipment. At the end of each shift, plaintiff was required to clean her work area. Occasionally, plaintiff was required to clean the machines that she operated.
4. When operating the zinser, plaintiff was required to load, or thread, polypropylene onto the machine's rollers using an aspirator. Plaintiff was responsible for threading each of the zinser's seventy-two positions. Plaintiff threaded each position between two and four times during each twelve hour shift. Each position required approximately forty-five seconds to thread. The aspirator used to thread the seventy-two positions weighed approximately two pounds and produced mild vibrations as it was being operated.
5. To thread the zinser's seventy-two positions, plaintiff held the aspirator in one hand and used it to wrap the polypropylene around a series of rollers. Each of the seventy-two positions on the zinser had six rollers around which the polypropylene was wound. The loading process required plaintiff to work overhead for approximately fifteen seconds at each position. Plaintiff was also required to use an aspirator when threading the extruder. The draw twister was threaded by hand, without using an aspirator.
6. When threading the zinser, plaintiff manipulated the aspirator about the machine and around the rollers using a variety of arm and hand movements. Plaintiff repeatedly flexed and extended her shoulders, elbows, and wrists. When wrapping the polypropylene around the various rollers, plaintiff moved her shoulders and wrists in circular motions. Whether plaintiff used her right or left arm and hand to hold the aspirator and load the machines depended upon which side of the machines she was operating. The threading requirements for the extruder were similar to the threading requirements for the zinser.
7. There were between six and seven employees in the department or section where worked. Plaintiff and the other employees rotated work stations within their department. As a result of work station rotations, plaintiff was not required to work at the same work station every day.
8. On 28 March 1994, plaintiff's only assignment for her twelve hour shift was to clean the zinser using a toothbrush. During her shift, plaintiff had two, twenty minute breaks and one thirty minute break. Other than the break periods, plaintiff spent the majority of her shift cleaning the zinser with a toothbrush.
9. After using the toothbrush to clean the zinser, plaintiff experienced pain and numbness in her hands. The pain and numbness she experienced after cleaning the zinser with the toothbrush was greater than the pain and numbness she had experienced in her thumbs, index fingers and long fingers during the previous two weeks. Plaintiff had used a toothbrush to clean the zinser on at least one previous occasion.
10. On 2 April 1994, plaintiff sought medical treatment at Ro-Med where her wrists were x-rayed and the doctor provided her with a prescription for anti-inflammatory medication. Thereafter, on 5 April 1994, plaintiff was seen by Dr. William T. Mason. In an effort to relieve plaintiff's pain and numbness, Dr. Mason provided plaintiff with wrist splints to be worn while at work and while at home.
11. On 28 March 1994, plaintiff had bilateral carpal tunnel syndrome. The pain and numbness experienced by plaintiff as a result of her carpal tunnel syndrome were greater in her right hand than in her left. On 20 May 1994, Dr. Mason performed a right carpal tunnel release.
12. Plaintiff's carpal tunnel syndrome preexisted her employment with defendant-employer and resulted from an idiopathic condition which caused her to retain body fluids. The repetitive arm and hand motions performed by plaintiff in her employment with defendant-employer significantly aggravated or accelerated her carpal tunnel syndrome.
13. Although plaintiff's employment significantly aggravated or accelerated her carpal tunnel syndrome, the evidence of record is insufficient to prove by its greater weight that plaintiff's employment with defendant-employer placed her at an increased risk of significantly aggravating or accelerating her preexisting condition as compared to members of the general public not so employed.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff did not contract carpal tunnel syndrome due to causes and conditions which were characteristic of and peculiar to her employment with defendant-employer. N.C. Gen. Stat. § 97-53 (13).
3. The aggravation or acceleration of plaintiff's preexisting carpal tunnel syndrome was not due to causes and conditions which were characteristic of and peculiar to her employment with defendant-employer and she was not exposed to an increased risk of aggravating her condition compared to members of the general public not so employed. N.C. Gen. Stat. § 97-53 (13);Wilkins v. J.P. Stevens Co., 333 N.C. 449,426 S.E.2d 675 (1993); Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
4. Plaintiff is entitled to no compensation under the North Carolina Worker's Compensation Act.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
FOR THE FULL COMMISSION
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 6/19/96